IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>JASON BATES, and SERENE AL-ABBODI,<br><br>  Defendants. | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM DECISION AND ORDER DENYING MOTION TO SUPPRESS<br><br>Case No. 2:21-CR-501-DAK<br><br>Judge Dale A. Kimball |

  This matter is before the court on Defendants Jason Bates and Serene Al-Abbodi's Motion to Suppress Evidence [ECF Nos. 242].[1]  On April 20, 2023, the court held an evidentiary hearing on the motion, and then requested the parties to file simultaneous briefs.  Mr. Bates requested an extension to file his brief until June 23, 2023, which the court granted as to all parties.  All parties submitted briefs by June 21, 2023.  The parties did not request closing arguments on the motion.  Accordingly, the court considers the motion fully briefed and ready for decision.  At the evidentiary hearing, Mr. Bates appeared and was represented by Scott C. Williams, Ms. Al-Abbodi appeared and was represented by Mark J. Gregersen, and the United States was represented by Seth Nielsen and Vernon G. Stejskal.  The court has carefully considered the evidence and testimony presented at the evidentiary hearing, the memoranda and arguments submitted by the parties, and the law and facts relating to the motion.  Now being

---

[1] Jason Bates filed a Motion to Suppress [ECF No. 242], and Serene Al-Abbodi filed a motion to join in that motion [ECF No. 249].  The court granted Ms. Al-Abbodi's motion to join [ECF No. 250].

fully advised, the court issues the following Findings of Fact, Conclusions of Law, and Memorandum Decision and Order on Defendant's Motion to Suppress Evidence.

## FINDINGS OF FACT

On September 3, 2021, Detective Dale Nicholas with the Salt Lake City Police Department was driving eastbound on 2700 South at 500 East when he saw a white Ford Expedition drift onto the solid white line and drive on the line momentarily. Detective Nicholas followed the Expedition and observed the driver fail to properly stop at the marked line before a crosswalk. When the Expedition turned northbound on 700 East, Detective Nicholas pulled the car over for the observed traffic violations. Detective Bennett, Detective Saget, and Detective Munoz arrived as back up.

Detective Nicholas made contact with the driver of the Expedition, got his information, and ran it through the system. Detectives identified Jason Bates as the driver and Serene Al-Abbodi as the front-seat passenger. There were no other occupants in the vehicle. After running Bates' information through their system, officers discovered that he had multiple warrants for his arrest.

Based on those warrants, Detective Nicholas placed Bates in handcuffs and put him in handcuffs. While doing so, Detective Nicholas notice a large amount of currency rolled up in his front pocket. The currency was not in an envelope or container. Based on Detective Nicholas' training and experience, he testified that finding a large amount of money stored like this is consistent with criminal activity. It was later determined that Bates had approximately $4,000 in cash in his front pocket.

Al-Abbodi originally gave officers a false name and date of birth, but ultimately provided officers with her correct information. At that point, officers instructed Al Abbodi to exit the

vehicle and she complied, leaving the passenger side door open and her purse in the vehicle. Officers were able to see a purple plastic tube clearly sticking out of her purse in plain view. Officers immediately recognized this purple tube as drug paraphernalia. At approximately the same time, Al-Abbodi called over an officer and informed him that she had "paraphernalia" for "DAB/THC in the car, in the bag." After Al-Abbodi told officers this, Detective Nicholas approached her and asked about the purple plastic tube, and she confirmed that it was used for "DAB/THC." Detective Nicholas testified that "DAB" contains THC, a Schedule I controlled substance.

The officers began searching he vehicle. Officers found $15,000 in cash located in the center console and glovebox. The money was tightly wound and folded into stacks of approximately $5,000. While officers were searching the vehicle, Al-Abbodi turned over a baggie containing a white substance from her jeans that she admitted were "bath salts." Detective Nicholas testified that "bath salts" is the street name for alpha-pyrrolidinohexiophenone, a Schedule I controlled substance.

## CONCLUSIONS OF LAW

**I.      Traffic Violation**

Al-Abbodi challenges the legality of the stop. Officer Nicholas saw what he believed to be traffic violations. "[T]he government need not show a violation actually occurred to justify an initial traffic stop. An initial traffic stop is valid under the Fourth Amendment not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998).

The court does not need to determine whether, in fact, the Expedition crossed the fog line or improperly entered the crosswalk.  Even if Detective Nicholas erroneously believed that the Expedition crossed the lines, it does not make the stop unlawful.  "That an officer's suspicions may prove unfounded does not vitiate the lawfulness of a stop, provided the officer's error was made in good faith and is objectively reasonable under the circumstances.  Police errors, in this context, are simply unavoidable as reasonable suspicion involves 'probabilities' rather than 'hard certainties.'"  *Untied States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009).  "An officer's reasonable mistake of fact does not a constitutional violation make.  '[W]hat is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable.'"  *United States v. Cunningham*, 630 F. App'x 873, 876 (10th Cir. 2015).  "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or law—must be objectively reasonable."  *Heien v. North Carolina*, 574 U.S. 54, 66 (2014).

In this case, the court concludes that Detective Nicholas' testimony demonstrates that he had an objectively reasonable belief that a traffic violation had occurred when he pulled over Bates' Expedition.  The court finds this testimony credible.  Al-Abbodi argues that the stop was pretextual.  But Detective Nicholas' testimony indicates that he was not willing to pull over the Expedition for a fabricated reason.  He testified that he saw what he believed to be a traffic violation and continued to follow the Expedition.  He did not pull over the Expedition until he saw what he thought was a second traffic violation.  This behavior makes his decision to stop the Expedition more credible.  Because the court concludes that Detective Nicholas reasonably pulled over Bates' Expedition for what he perceived to be traffic violations, the court concludes

that there are no grounds for suppressing the evidence based on Al-Abbodi's contention that the stop was pretextual.

## II.     Probable Cause to Search Vehicle

Defendants argue that the officers' search of the entire Expedition without a warrant violates the Fourth Amendment. The Fourth Amendment protects the public from "unreasonable searches and seizures." U.S. Const. Amend. IV. Searches conducted without a warrant "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 129 S. Ct. 1710 (2009). If the government establishes that an exception to the warrant requirement applies, the action is deemed constitutional. *United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020). The United States argues that two exceptions to the Fourth Amendment's warrant requirement apply in this case: (1) the automobile exception; and (2) the plan view doctrine.

"'The Supreme Court has held that "police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant."'" *United States v. Sparks*, 291 F.3d 683, 690 (10th Cir. 2002) (quoting *United States v. Anderson*, 114 F.3d 1059, 1065 (10th Cir. 1997) (quoting *Florida v. Meyers*, 466 U.S. 380, 381 (1984)). In this case, the vehicle exception applies. Because the search in question is one of a vehicle following a traffic stop, the officers could legally search the inside of Bates' vehicle without obtaining a warrant if the officers had probable cause to believe there was contraband inside Bates' vehicle.

The second exception—the plain view doctrine—"allows police officers to properly seize evidence of a crime without a warrant if: (1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately

apparent . . . ; and (3) the officer had a lawful right to access the object itself." *Id.* In *Sparks*, the Tenth Circuit recognized that reviewing courts have sometimes used both the vehicle exception and the plain view doctrine "in combination in upholding warrantless vehicle searches." *Id.* "More specifically, if an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation, either alone or in combination with additional facts, has been sufficient to allow the officer to conduct a probable cause search of the vehicle." *Id.* at 690-91 (citing multiple cases allowing search of the entire vehicle based on observation of incriminating objects).

In this case, Detective Nicholas plainly observed a large quantity of rolled currency in Bates' front pocket. He testified that he immediately recognized the rolled currency as consistent with criminal activity. The currency was not in an envelope or other container and was a sizeable amount—approximately $4,000—to be carrying in a front pocket. Detective Nicholas then saw the purple tube poking out of Al-Abbodi's purse. Al-Abbodi left the vehicle door open as she left the vehicle, and the purse and purple tubing was in plain view of the officers. Given that these items were in plain view, there was no legitimate expectation of privacy. The incriminating character of the drug paraphernalia was immediate apparent to the officers. Detective Nicholas testified that, based on his training and experience, he immediately knew that the tube was used as drug paraphernalia. To confirm this assumption, Detective Nicholas asked Al-Abbodi about the tube and she immediately confirmed that it was used for "DAB/THC," and illegal controlled substance.

Bates had felony warrants out for his arrest and had so much currency rolled up in his front pocket that it was in plain view of the arresting detective. His passenger, Al-Abbodi, gave a false name and date of birth, left the vehicle door open so that the officers could plainly see

drug paraphernalia, and admitted to having drug paraphernalia in the vehicle. All of these facts, under the totality of the circumstances, provided the officers with sufficient probable cause to search the vehicle under the automobile exception.

Bates argues that officer only had probable cause to search Al-Abbodi's purse, not the entire vehicle. But "once the officers' suspicions rise to the level of probable cause, they are empowered to search the entire vehicle, including the trunk and all containers therein that might contain contraband." *United States v. Harmon*, 785 F. Supp. 2d 1146, 1149 (D.N.M. 2011) (quoting *United States v. Vazquez*, 555 F.3d 923, 930 (10th Cir. 2009) and *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008)). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). Because there was sufficient probable cause to search the vehicle, the officers had probable cause to search the entire vehicle, not just Al-Abbodi's purse.

Based on the applicability of the automobile exception and plain view doctrine, the court concludes that the officers had probable cause to search the entire vehicle. Therefore, the court denies Defendants' motion to suppress.

## CONCLUSION

Based on the above Findings of Fact and Conclusions of Law, Defendants Jason Bates and Serene Al-Abbodi's Motion to Suppress Evidence [ECF No. 242] is DENIED. Because the time under the Speedy Trial Act has been tolled due to the pendency of this motion, this matter currently has no trial date. Based on the complexity of this multi-defendant action and the volume of discovery, the court sets the matter for a ten-day trial beginning November 6, 2023.

DATED this 22nd day of June, 2023.

BY THE COURT:

DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE